# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISON

BRENT BLACK

        Petitioner,

      v.

DORIS FALKENRATH,

        Respondent.

Case No. 2:21-4207-NKL

## ORDER

Brent Black's petition for a writ of habeas corpus is before the Court. *See* Doc. 1. Black was convicted in Missouri State Court for child abuse in the first degree and murder in the second degree. Black argues that his trial counsel was ineffective in multiple ways, and that he was denied due process because the state trial court gave a hammer instruction. For the reasons stated below, the Court dismisses claims 2-5 of Black's petition and finds that an evidentiary hearing is needed to resolve claim 1.

## I.     BACKGROUND

### A. Underlying Facts

Black's girlfriend ("B.G.") had a child ("S.G.") from a previous relationship. On January 25, 2013, S.G.'s father returned S.G. to Black and B.G. around 7:00 pm. After S.G. and B.G. went to sleep, Black stayed awake watching television.

Black told the Rolla Police that, at about two in the morning, he heard S.G. crying. He gave her a bottle, changed her diaper, and laid her back down in the crib. After another hour, Black heard S.G. making some babbling sounds and coughing, but he was not concerned because

she just had a cold.  When Black checked on S.G. a few minutes later her face was blue.  He checked to see if there was anything in her mouth.  He didn't see anything, but he felt something.  He unsuccessfully tried to remove the object with his finger, and then removed a baby wipe from her throat with pliers.  After unsuccessfully trying CPR, Black carried S.G. to B.G.  He fell while carrying S.G. to B.G.  Black woke up B.G. and called 911 from a neighbor's apartment.

A paramedic arrived and found that S.G. was not breathing and had no pulse.  She intubated S.G.  An EMT noted a large bruise on S.G.'s forehead.  S.G. was admitted to Children's Mercy Hospital and provided life support.  After an examination indicated S.G. was brain dead, her life support was removed.  S.G. died on January 28, 2013.

## B.  Examinations of S.G.

Dr. Atzemis is the director of the Child Protection Program at Children's Mercy Hospital.  She was brought in by the State to consult on S.G.'s case.  Dr. Atzemis reviewed hospital records, spoke to the medical providers, and physically examined S.G before S.G.'s death.  Dr. Atzemis observed multiple bruises and contusions on S.G.'s head and face.  Dr. Atzemis determined S.G. had a subdural hematoma (a collection of blood in the layers outside the brain) and swelling of the brain.  Dr. Atzemis opined that S.G.'s injuries were most likely the result of abusive head trauma caused by another person.  Based on her experience treating similar patients, Dr. Atzemis "wouldn't expect a subdural hematoma" to form because of a child being held by an adult falling onto a tile floor or by the lack of oxygen due to choking on a baby wipe.  Dr. Atzemis could not definitively say that S.G. suffered abusive head trauma but had reasonable cause to believe that S.G. did.

After S.G.'s death, Dr. Case, a medical examiner, performed an autopsy.  Dr. Case discovered multiple injuries to S.G.'s skull that were caused by very forceful movement of the

2

head.  Dr. Case testified that the injuries would have immediately knocked S.G. unconscious, and that S.G. died from head injuries caused by multiple non-accidental impacts.  Dr. Case did not believe it was possible for S.G. to swallow a baby wipe.

### C.  Trial

Black was charged with child abuse in the first degree and murder in the second degree for killing S.G. through the commission of a felony.  At trial, Dr. Atzemis and Dr. Case testified to the conclusions described above.  Black called Dr. Young, a forensic pathologist, to testify on his behalf.  Dr. Young testified that choking on a baby wipe could have led to S.G.'s death.

The jury deliberated for approximately seven and a half hours.  Twice during the deliberations, the jury indicated they were at an impasse and asked what to do.  After the second request, the Judge gave the "hammer instruction" and told the jury to make every reasonable effort to reach a verdict.  During deliberations the jury asked: (1) "[w]hat is the definition of murder in the second degree?"; (2) "[c]an we agree to a lesser charge?"  The Judge responded, "[t]he definition of murder in the second degree is contained in [i]nstruction No. 7.  You are to consider the [i]nstructions only as provided."  The jury found Black guilty of both counts.  He was sentenced to consecutive terms of 12 years for child abuse in the first degree and life imprisonment for murder in the second degree.

### D.  Appellate History

Black filed a direct appeal, and the Missouri Court of Appeals affirmed his conviction and sentence.  Doc. 9-3 (Court of Appeals Decision).  On direct appeal, Black argued that the trial court erred in allowing Dr. Case to testify, giving the jury the "hammer instruction," and entering

a written sentence that differed from the sentence given at trial.[1]  Doc. 9-1 (Black's Direct Appeal Brief).  The Missouri Court of Appeals denied Black's first two claims and remanded with an instruction to fix the discrepancy between the oral and written sentences.  Doc. 9-3.  Black did not appeal that decision to the Supreme Court of Missouri.

Black then filed a timely *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15 in the trial court.  The trial court appointed a public defender who filed an amended motion.  Black's counsel argued that his trial counsel was ineffective for failing to: (1) present available evidence that S.G. was abused by her father; (2) adequately cross-examine B.G.; (3) timely file a motion for a new trial; and (4) object to Dr. Case's testimony.  The motion court held an evidentiary hearing and denied the motion.  Doc. 9-8 (Motion Court Hearing Transcript).

Black appealed that decision to the Missouri court of appeals.  Doc. 9-5 (Black's Post-conviction Appeal Brief); Doc. 9-6 (State's Post-conviction Appeal Brief).  The court of appeals affirmed the lower court's ruling.  Doc. 9-7. (Appellate Decision).

### E.  Habeas Petition

In his writ for habeas corpus, Black makes the following five claims: (1) his trial counsel was ineffective for failing to submit a jury instruction for the lesser included offense of involuntary manslaughter in the first degree; (2) his trial counsel was ineffective for failing to present available evidence that S.G. was abused by her biological father; (3) his trial counsel was ineffective in failing to adequately cross-examine B.G.; (4) his trial counsel was ineffective for failing to object to Dr. Case's testimony; and (5) he was denied due process by the trial court's decision to submit a "hammer" instruction to the jury.

---

[1] The judge orally sentenced Black to life in prison for his murder conviction.  However, the written sentence stated he was sentenced to 99 years.

## II. LEGAL STANDARD

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). 28 U.S.C. § 2254 "bars relitigation [in federal court] of any claim adjudicated on the merits in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Id.* at 98. Thus, for a habeas petitioner to be successful on a previously litigated claim he must show the state court's decision

> (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court violates the "contrary to" clause in § 2254(d)(1) if it "applies a rule that contradicts the governing law set forth" by the Supreme Court or if the state court "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000). "A state court violates the 'unreasonable application' clause of § 2254(d)(1) if it 'identifies the correct rule but unreasonably applies it to the facts of case.'" *Id.* at 407. "It is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Flowers v. Norris,* 585 F.3d 413, 417 (8th Cir. 2009) (citation omitted).

A petitioner has a Sixth Amendment right to competent counsel. For Black to show he was deprived of that right, he must prove his attorney's performance fell below an objective standard of reasonableness and he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Scrutiny of Black's counsel's performance must be highly deferential, and the Court must avoid the temptation to second guess a lawyer's strategy because it was unsuccessful.

5

*Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 133-134 (1982)). To prove prejudice, Black must show that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### III. DISCUSSION

#### A. Whether Claims 2-5 Survive Scrutiny under 28 U.S.C.§ 2254(d)

Claims 2-4 were denied in Black's rule 29.15 post-conviction proceedings. Claim 5 was denied in Black's direct appeal. Consequently, to be successful on Claims 2-5, Black would have to show that the Missouri courts' rulings violated 28 U.S.C. § 2254(d) because they were contrary to, or involved an unreasonable application of, federal law or resulted in a decision that was based on an unreasonable determination of the facts. Black "candidly concedes" that he cannot make that showing. Doc. 13, at 2 (Petitioner's Traverse). As a result, claims 2-5 are denied.

#### B. Whether Black Can Overcome the Procedural Default of Claim 1

In Claim 1, Black alleges that his Sixth and Fourteenth Amendment rights were violated because his trial counsel failed to request a jury instruction for involuntary manslaughter in the first degree. This claim is procedurally defaulted because it was not raised during Black's state court proceedings. Normally, a federal court must deny claims for relief that have been procedurally defaulted. *Beaulieu v. Minnesota,* 583 F.3d 570, 573 (8th Cir. 2009) (citation omitted). However, Black argues that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), since the ineffective assistance of counsel claim could not be raised on

direct appeal under Missouri law,[2] and his post-conviction counsel was ineffective for failing to raise Claim 1 in his rule 29.15 proceeding. *Martinez* holds that a petitioner can show cause for procedural default if the petitioner can show that his post-conviction counsel's failure to raise a claim was constitutionally ineffective under *Strickland*. 566 U.S. at 14-15.

Falkenrath argues that the pleadings in Black's writ for habeas corpus are insufficient to establish that *Martinez* excuses the procedural default of claim 1.[3] Generally, a habeas petitioner cannot rely on notice pleading but rather "is required [to] state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990).

In his habeas corpus petition, Black acknowledges that he did not previously bring the claim in state court and states the reason was "ineffective assistance of 29.15 counsel." Doc. 1, at 12. Interpreted liberally, the petition alleges that his procedural default should be excused under *Martinez*. The fact that Black did not specifically describe his 29.15 counsel's failures is not a reason to dismiss his claim. First, procedural default is an affirmative defense, so any defect in Black's voluntary pleading, could not have prejudiced the Defendant. Second, it would be unreasonable to require a *pro se* litigant to specifically plead his lawyer's failure to

---

[2] The Parties agree that, under Missouri law, ineffective assistance claims cannot be brought on direct appeal.

[3] Falkenrath does not argue that the underlying claim is insufficiently plead.

affirmatively request a lesser included offense instruction.  Such degree of detail is not within the

grasp of a *pro se* litigant.[4]

### C. Whether Claim 1, Ineffective Assistance of Counsel, Can Be Based on the Failure to Request a Lesser Included Jury Instruction

In Claim 1, Black alleges that the trial court was required to include a jury instruction for

involuntary manslaughter in the first degree because it is the lesser included offense of murder in

the second degree.[5]  He claims the jury was presented with an "all or nothing" choice.  If presented

with an involuntary manslaughter instruction, there is a reasonable probability they would have

compromised by finding him not guilty of murder in the second degree but guilty of involuntary

manslaughter in the first degree.  Black highlights that the jury asked during deliberations if they

could convict Black on a lesser charge.

Before analyzing the merits of Black's specific claim, the Court must first determine

whether a claim for ineffective assistance of counsel can be based on the failure to request a lesser

included instruction.  In *Arnold v. Dormire*, 675 F.3d 1082 (8th Cir. 2012), the petitioner alleged

that his counsel was ineffective for failing to request a jury instruction on false imprisonment as a

lesser included offense of kidnapping.  The Eighth Circuit determined that the claim should be

denied because the Missouri court of appeals had decided Arnold's counsel did not act

unreasonably since Arnold was not entitled to such an instruction under Missouri law.  *Id.* at 1086.

The Eight Circuit then stated:

---

[4] Doc. 1 appears to be signed by Black's current attorney.  However, based on the briefing of the parties, the Court assumes that the original petition is correctly described as *pro se*.

[5] At oral argument, Falkenrath did not contest that Black was entitled to the jury instruction under Missouri law.

even if the failure to give an instruction did constitute a violation of state law, habeas relief can be granted only if the failure "amounted to 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Crump v. Caspari*, 116 F.3d 326, 327 (8th Cir. 1997) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

*Id.* The Eighth Circuit concluded that "[n]o such fundamental defect exist[ed]" in *Arnold* because the Supreme Court "ha[d] never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." *Id.* (quoting *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007)). The Eighth Circuit affirmed the denial of habeas relief on that ground.

For three reasons, the Court does not read *Arnold* to automatically bar ineffective assistance claims for failure to request a lesser included instruction. First, the Court in *Arnold* did not explicitly state that the failure to *request* a lesser included instruction could not be the basis for a federal habeas claim; rather, the Eighth Circuit stated that the *trial court's failure to give* a lesser included instruction did not warrant habeas scrutiny. This holding is consistent with a long line of Eighth Circuit cases that have denied habeas claims based upon a trial court's refusal to give a lesser included instruction. *E.g., Carney v. Fabian*, 487 F.3d 1094, 1097 n.5 ("Because '[t]he Supreme Court has never held that due process requires the giving of lesser included-offense instructions in noncapital cases,' . . . the trial court's refusal to give the [lesser included] jury instruction here cannot be considered to be contrary to clearly established federal law." (internal citation omitted)); *Green v. Groose*, 959 F.2d 708, 709 (8th Cir. 1992) ("[T]his is a noncapital case and we have held 'the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question' . . . Thus, given the circumstances in this case, 'any error committed by the trial court . . . in failing [properly to] instruct on [in]voluntary manslaughter does not present a constitutional question cognizable on federal habeas review.'") (internal citations omitted). But these cases are distinguishable because, in the ineffective

assistance of counsel context, the constitutional violation is the deprivation of the petitioner's Sixth Amendment right to competent counsel, not the failure of the trial court to give the instruction. *See generally*, *Strickland*, 446 U.S. 668 (holding ineffective assistance of counsel violates a defendant's Sixth Amendment right to an attorney).

Second, holding that ineffective assistance claims cannot be stated in certain contexts would be inconsistent with *Strickland*, which requires only deficient performance by defense counsel and prejudice to the petitioner. *Id.* at 688-96.

Third, with one exception, district courts across the Eighth Circuit have entertained claims like Black's after *Arnold*. *See Clemons v. Buckner*, No. 4:18 CV 1285-JMB, 2021 WL 1312975, at *8 (E.D. Mo. Apr. 8, 2021); *Moss v. Griffith*, No. 4:17-CV-2251-NAB, 2020 WL 7023959, at *7 (E.D. Mo. Nov. 30, 2020); *Murphy v. Stange*, No. 1:18-CV-30 RLW, 2020 WL 6318070, at *6 (E.D. Mo. Oct. 28, 2020); *Charles v. Vandergriff*, No. 4:17 CV 2494 CDP, 2020 WL 6313737, at *3 (E.D. Mo. Oct. 28, 2020); *McAllister v. Redington*, No. 4:16CV558 RLW, 2019 WL 4261455, at *7 (E.D. Mo. Sept. 6, 2019); *Martin v. Norman*, No. 4:18CV00427 ERW, 2019 WL 3238506, at *8 (E.D. Mo. July 18, 2019); *Wise v. Wallace*, No. 4:16 CV 8 (JMB), 2018 WL 4616535, at *7 (E.D. Mo. Sept. 26, 2018); *Barber v. Kelley*, No. 5:17-CV-4-BD, 2018 WL 401821, at *10 (E.D. Ark. Jan. 12, 2018); *but see Whitley v. Bowersox,* No. 4:16 CV 1537 (JMB), 2019 WL 2009642, at *4 (E.D. Mo. May 7, 2019) (citing *Arnold* in holding that a habeas claim cannot be based on counsel's failure to request a lesser included instruction).

### D.  Whether an Evidentiary Hearing Is Necessary to Resolve Claim 1.

Black requested an evidentiary hearing.  An evidentiary hearing is not needed if the claim is inadequate on its face, or if the record conclusively shows that the movant is not entitled to relief. *See Bradshaw v. United States,* 153 F.3d 704, 708 (8th Cir. 1998).

Falkenrath argues that because requesting an instruction that Black committed involuntary manslaughter would have been inconsistent with Black's trial lawyer's strategy of arguing that Black did not abuse S.G., claim 1 is unpersuasive. Falkenrath cites to *Watts v. Roper*, No. 4:03-CV-526 (CEJ), 2006 WL 2708630, at *2 (E.D. Mo. Sept. 20, 2006), for the proposition that failing to request a lesser included instruction that would be inconsistent with trial counsel's strategy is not ineffective assistance of counsel. However, in *Watts*, petitioner's trial counsel testified, and the Court agreed, that requesting the lesser included instruction was inconsistent with the trial counsel's strategy. *Id.* There is no such testimony here.

Similarly, there is insufficient evidence to determine whether Black's postconviction counsel was ineffective for failing to raise the claim on appeal because there is no evidence regarding why postconviction counsel did not raise this claim. *See Sasser v. Hobbs*, 735 F.3d 833, 853-54 (8th Cir. 2013) (remanding the case to the district court for an evidentiary hearing because petitioner was unable to develop his claim in State Court due to his appellate counsel's ineffectiveness).

Since the record before the Court is insufficient to determine whether the procedural default may be excused under *Martinez*, or if the underlying claim is valid, an evidentiary hearing is warranted.

## IV.    CONCLUSION

For the reasons stated above, claims 2-5 are denied. With respect to claim 1, an evidentiary hearing will be scheduled.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 16, 2022
Jefferson City, Missouri